## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| LAVAR BOLDEN | ) | CASE NO. |
| 824 North Main Street | ) | |
| Lima, Ohio 45801, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| ALPLA INC. | ) | |
| 3320 Fort Shawnee Industrial Drive | ) | **JURY DEMAND ENDORSED** |
| Lima, Ohio 45806 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| Corporation Service Company | ) | |
| Statutory Agent | ) | |
| 50 West Broad Street | ) | |
| Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Lavar Bolden, by and through undersigned counsel, as his Complaint against

Defendant Alpla Inc., states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Bolden is a resident of the city of Lima, Allen County, Ohio.

2. At all times herein, Bolden was acting in the course and scope of his employment.

3. Alpla is a foreign corporation that does business at 3320 Fort Shawnee Industrial Drive, Lima,

   Allen County, Ohio 45806.

4. Alpla is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. All of the material events alleged in this Complaint occurred in Allen County, Ohio.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bolden is alleging a Federal Law Claim under Title VII the Civil Rights Act of 1964, 28 U.S.C. § 2000e ("Title VII"); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

7. This Court has supplemental jurisdiction over Bolden's state law claims pursuant to 28 U.S.C. § 1367 as Bolden's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Bolden filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2020-02230 against Alpla ("Bolden EEOC Charge").

10. On or about September 4, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Bolden regarding the Charges of Discrimination brought by Bolden against Alpla in the Bolden EEOC Charge.

11. Bolden received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Bolden has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Bolden has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Bolden is a former employee of Alpla.

15. On or about June 3, 2019, Bolden began working for Alpla.

16. Alpla employed Bolden as a packer.

17. At all times herein, Bolden was qualified for the position of packer.

18. Bolden is 43 years old.

19. Throughout Bolden's employment at Alpla, Bolden was over 40 years old.

20. Bolden is a member of a protected class on the basis of age.

21. Bolden is African American.

22. In or about September 2019, Heather Myers became Bolden's supervisor.

23. Myers did not participate in the decision to hire Bolden.

24. Myers is Caucasian.

25. Myers is under age 40.

26. In or about September 2019, Myers accused Bolden of not wearing earplugs ("September Accusation").

27. The September Accusation was false.

28. At the time of the September Accusation, Bolden was wearing earplugs.

29. As a result of the September Accusation, Myers gave Bolden a final written warning ("Final Written Warning").

30. The Final Written Warning was an adverse employment action.

31. Myers gave Bolden the Final Written Warning because of his race.

32. Myers gave Bolden the Final Written Warning because of his age.

33. Alpla has a progressive disciplinary system ("Discipline Policy").

34. The Discipline Policy provides that the lowest disciplinary step is a verbal warning.

35. The Discipline Policy provides for a written warning, a step above a verbal warning.

36. The Discipline Policy provides for a final written warning, a step above a written warning.

37. The Discipline Policy provides that the highest level of discipline is termination.

38. Bolden did not receive a verbal warning before the Final Written Warning.

39. Bolden did not receive a written warning before the Final Written Warning.

40. Alpla knowingly skipped progressive disciplinary steps in giving Bolden the Final Written Warning.

41. Alpla intentionally skipped progressive disciplinary steps in giving Bolden the Final Written Warning.

42. Alpla willfully skipped progressive disciplinary steps in giving Bolden the Final Written Warning.

43. Alpla knowingly took an adverse employment action against Bolden.

44. Alpla intentionally took an adverse employment action against Bolden.

45. Alpla willfully took an adverse employment action against Bolden.

46. In or about October 2019, Bolden asked Myers to allow him to transfer out of Myers's department ("Transfer Request").

47. In or about October 2019, three operator positions outside Myers's department opened up.

48. Myers denied the Transfer Request.

49. Myers hired three people under age 40 for the operator positions.

50. Myers denied the Transfer Request because of Bolden's race.

51. Myers denied the Transfer Request because of Bolden's age.

52. In or about October 2019, Bolden reported to Tim (Last Name Unknown) that Myers was discriminating against Bolden on the basis of his race ("First Report of Discrimination").

53. Tim LNU was Myers's immediate superior.

54. Tim LNU is Caucasian.

55. In the October 2019, Bolden asked Tim LNU to grant the Transfer Request.

56. Tim LNU did not grant the Transfer Request.

57. In or about November 2019, one of Bolden's coworkers, Jamie (Last Name Unknown), said, with Bolden present, that he did not want to "be here working like no nigger" ("N-Word Comment").

58. Jamie LNU is Caucasian.

59. The N-Word Comment was severe.

60. The N-Word Comment created a hostile work environment on the basis of race.

61. Alpla terminated Jamie LNU's employment due to the N-Word Comment.

62. After the N-Word Comment, Myers told Bolden that she did not believe Alpla should have terminated Jamie LNU's employment due to the N-Word Comment.

63. After the N-Word Comment, Myers told Bolden multiple times that she did not believe Alpla should have terminated Jamie LNU's employment due to the N-Word Comment.

64. Myers's response to the N-Word Comment was severe.

65. Myers's response to the N-Word Comment was pervasive.

66. Myers's response to the N-Word Comment created a hostile work environment on the basis of race.

67. In or about November 2019, Bolden reported to Tim LNU that Myers was discriminating against Bolden on the basis of his race ("Second Report of Discrimination").

68. In or about December 2019, Bolden reported to Tim LNU that Myers was discriminating against Bolden on the basis of his race ("Third Report of Discrimination").

69. Bolden made the Third Report of Discrimination in writing, on a form provided by Alpla.

70. Hereinafter, the First Report of Discrimination, Second Report of Discrimination, and Third Report of Discrimination are collective called the "Reports of Discrimination."

71. Alpla has a policy against discrimination ("Discrimination Policy").

72. Alpla's Discrimination Policy precludes retaliation against employees who complain about discrimination.

73. Alternatively, retaliation against employees who complain about discrimination is permitted by Alpla.

74. Alpla's Discrimination Policy precludes intimidation against employees who complain about discrimination.

75. Alternatively, intimidation against employees who complain about discrimination is permitted by Alpla.

76. Alpla's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

77. Alpla's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

78. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Alpla.

79. Alpla's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

80. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Alpla.

81. Alpla has a policy to investigate reports of violations of its Discrimination Policy.

82. An investigation should include interviewing the complainant.

83. An investigation should include interviewing the subject of the complaint.

84. An investigation should include interviewing the subject of the reported discrimination.

85. An investigation should include interviewing witnesses to the reported discrimination.

86. An investigation should include getting a written statement from the complainant.

87. An investigation should include getting a written statement from the subject of the complaint.

88. An investigation should include getting a written statement from the subject of the reported discrimination.

89. In response to Bolden's Reports of Discrimination, Alpla did not interview Bolden.

90. In response to Bolden's Reports of Discrimination, Alpla did not interview Myers.

91. In response to Bolden's Reports of Discrimination, Alpla did not interview witnesses.

92. In response to Bolden's Reports of Discrimination, Alpla did not get a written statement from Bolden.

93. In response to Bolden's Reports of Discrimination, Alpla did not get a written statement from Myers.

94. In response to Bolden's Reports of Discrimination, Alpla did not get a written statement from witnesses.

95. Alpla did not investigate Bolden's Reports of Discrimination.

96. Alpla did not give Myers a verbal warning as a result of the Reports of Discrimination.

97. Alpla did not give Myers a written warning as a result of the Reports of Discrimination.

98. Alpla did not give Myers a final warning as a result of the Reports of Discrimination.

99. Alpla did not give Myers a suspension as a result of the Reports of Discrimination.

100. Alpla did not give Myers a termination as a result of the Reports of Discrimination.

101. Alpla did not give Myers any discipline at all as a result of the Reports of Discrimination.

102. On or about January 10, 2020, Alpla terminated Bolden's employment ("Termination").

103. On or about January 10, 2020, Myers informed Bolden about the Termination.

104. The Termination was an adverse action.

105. The Termination was an adverse employment action.

106. On or about January 10, 2020, Myers alleged that the reason for the Termination was that Bolden was not wearing earplugs ("January Accusation").

107. The January Accusation had no basis in fact.

108. At the time of the January Accusation, Bolden was wearing earplugs.

109. The January Accusation was not the real reason for the Termination.

110. The January Accusation was not a sufficient basis to justify the Termination.

111. The January Accusation was pretextual.

112. Alpla knowingly skipped progressive disciplinary steps in terminating Bolden.

113. Alpla knowingly terminated Bolden's employment.

114. Alpla knowingly took an adverse employment action against Bolden.

115. Alpla knowingly took an adverse action against Bolden.

116. Alpla intentionally skipped progressive disciplinary steps in terminating Bolden.

117. Alpla intentionally terminated Bolden's employment.

118. Alpla intentionally took an adverse employment action against Bolden.

119. Alpla intentionally took an adverse action against Bolden.

120. Alpla knew that skipping progressive disciplinary steps in terminating Bolden would cause Bolden harm, including economic harm.

121. Alpla knew that terminating Bolden would cause Bolden harm, including economic harm.

122. Alpla willfully skipped progressive disciplinary steps in terminating Bolden.

123. Alpla willfully terminated Bolden's employment.

124. Alpla willfully took an adverse employment action against Bolden.

125. Alpla willfully took an adverse action against Bolden.

126. On or about January 10, 2020, Alpla terminated Bolden's employment because of his race.

127. On or about January 10, 2020, Alpla terminated Bolden's employment because of his age.

128. On or about January 10, 2020, Alpla terminated Bolden's employment because of his opposition to discrimination.

129. As a direct and proximate result of Alpla's conduct, Bolden suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I:  RETALIATION IN VIOLATION OF TITLE VII

130. Bolden restates each and every prior paragraph of this complaint, as if it were fully restated herein.

131. As a result of Alpla's discriminatory conduct described above, Bolden complained about the discrimination he was experiencing.

132. Subsequent to Bolden's reporting of discrimination, Alpla terminated Bolden's employment.

133. Alpla's actions were retaliatory in nature based on Bolden's opposition to the unlawful discriminatory conduct.

134. Pursuant to Title VII, it is an unlawful discriminatory practice retaliate against an employee for opposing unlawful discrimination.

135. As a direct and proximate result of Alpla's conduct, Bolden suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

136. Bolden restates each and every prior paragraph of this complaint, as if it were fully restated herein.

137. As a result of Alpla's discriminatory conduct described above, Bolden complained about the discrimination he was experiencing.

138. Subsequent to Bolden's reporting of discrimination, Alpla terminated Bolden's employment.

139. Alpla's actions were retaliatory in nature based on Bolden's opposition to the unlawful discriminatory conduct.

140. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

141. As a direct and proximate result of Alpla's conduct, Bolden suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

142. Bolden restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. Throughout his employment, Bolden was fully competent to perform his essential job duties.

144. Alpla treated Bolden differently than other similarly-situated employees based on his race.

145. Alpla violated R.C. § 4112.02(A) *et seq.*by discriminating against Bolden due to his race.

146. On or about January 10, 2020, Alpla terminated Bolden's employment without just cause.

147. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

148. Alpla terminated Bolden based on his race.

149. Alpla violated Title VII when it terminated Bolden based on his race.

150. As a direct and proximate result of Alpla's conduct, Bolden has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

151. Bolden restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Throughout his employment, Bolden was fully competent to perform his essential job duties.

153. Alpla treated Bolden differently than other similarly-situated employees based on his race.

154. Alpla violated R.C. § 4112.02(A) *et seq.* by discriminating against Bolden due to his race.

155. On or about January 10, 2020, Alpla terminated Bolden's employment without just cause.

156. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

157. Alpla terminated Bolden based on his race.

158. Alpla violated R.C. § 4112.01 *et seq.* when it terminated Bolden based on his race.

159. As a direct and proximate result of Alpla's conduct, Bolden has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: AGE DISCRIMINATION IN VIOLATION OF ADEA

160. Bolden restates each and every prior paragraph of this complaint, as if it were fully restated herein.

161. Bolden is 43 years old.

162. At all times relevant, Bolden was a member of a statutorily-protected class under R.C. § 4112.14(B).

163. Alpla treated Bolden differently from other similarly situated employees based on his age.

164. Bolden was fully qualified for his position and employment with Alpla.

165. Bolden, at age 42, was a member of a statutorily-protected class under R.C. § 4112.14(B) at the time he was terminated from his employment with Alpla.

166. On or about January 10, 2020, Alpla terminated Bolden's employment.

167. Alpla violated ADEA by discriminating against Bolden based on his age.

11

168. As a direct and proximate result of Alpla's conduct, Bolden suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Bolden respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Alpla retroactively to restore Bolden to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Alpla of compensatory and monetary damages to compensate Bolden for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Alpla in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bolden's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*s/ Andrew Pappert, Esq.*
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
         drew.pappert@spitzlawfirm.com
*Attorneys for Plaintiff Lavar Bolden*

## JURY DEMAND

Plaintiff Bolden demands a trial by jury by the maximum number of jurors permitted.

*s/ Andrew Pappert, Esq.*
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
